**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 19-cv-01114**

**HEIDI LOSHBAUGH,**

**Plaintiff,**

**v.**

**The State of Colorado Community College and Occupational Educational System ("CCCS"); Byron McClenney, in his official capacity as a CCCS Board Member;**
**Rollie Heath, in his official capacity as a CCCS Board Member;**
**Ken Weil, in his official capacity as a CCCS Board Member;**
**Daniel Villanueva, in his official capacity as a CCCS Board Member;**
**Russ Meyer, in his official capacity as a CCCS Board Member;**
**Jim Johnson, in his official capacity as a CCCS Board Member;**
**Marie-Vittoria Carminati, in her official capacity as a CCCS Board Member;**
**Presley Askew, in his official capacity as a CCCS Board Member;**
**Theresa Pena, in her official capacity as a CCCS Board Member;**
**Kelly O'Dell, in her official capacity as a CCCS Board Member;**
**Elena Barrera, in her official capacity as a CCCS Board Member;**
**Everette Freeman, President of the Community College of Denver, in his individual and official capacity;**
**Rhonda Epper, Provost of the Community College of Denver, in her individual and official capacity;**
**Patty Davies, Director, Human Resources, Community College of Denver, in her individual and official capacity.**

**Defendants.**

---

## AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff, Heidi Loshbaugh, through her counsel, the law firm of Benezra & Culver, P.C., for her Amended Complaint and Jury Demand alleges the following:

## I. INTRODUCTION

1. Plaintiff Heidi Loshbaugh was employed as the Dean of Math and Science at the Community College of Denver (hereinafter referred to as "CCD") from 2011 and until she was wrongfully terminated on May 30, 2018. Dr. Loshbaugh complained about race discrimination with respect to the hiring of an Assistant Professor in the Mathematics Department. Dr. Loshbaugh also complained that the Chair of the CCD Mathematics Department, Teresa Adams, had been unlawfully retaliated against and demoted by CCD for complaining about race discrimination with respect to the hiring of the Assistant Professor. After complaining of discrimination and retaliation, CCD removed Dr. Loshbaugh's job responsibilities and subjected her to a hostile work environment which included inaccurate and unfair evaluations of her performance and placing her on an unfair and misleading performance improvement plan ("PIP"). Dr. Loshbaugh was then fired approximately one week after filing a complaint with both the State of Colorado Community College and Occupational Education System (hereinafter "CCCS") and a charge of discrimination with the Colorado Civil Rights Division in which she alleged that she was being discriminated and retaliated against by CCD.

## II. JURISDICTION AND VENUE

2. Jurisdiction is proper in this judicial district because Plaintiff Loshbaugh is alleging violations of her rights under Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000, *et seq*. (hereinafter referred to as "Title VII"); 42 U.S.C. § 1981; the First Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983; the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. (hereinafter referred to as "ADA"); the Age Discrimination in Employment Act as amended, 29 U.S.C. § 621, *et seq*. (hereinafter referred to as the "ADEA"), the Family Medical Leave Act, 29 U.S.C.

§ 2615 (a), *et seq*. (hereinafter referred to as "FMLA"), and the Federal Rehabilitation Act, 29 U.S.C. § 791, *et seq*.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because the unlawful acts giving rise to Dr. Loshbaugh's claims occurred within the jurisdiction of the United States District Court for the District of Colorado.

4. Plaintiff Loshbaugh has complied with all of the administrative, jurisdictional, and legal prerequisites for the filing of this action. Specifically, Plaintiff Loshbaugh has filed a charge of unlawful discrimination and retaliation with the Colorado Civil Rights Division alleging race, gender, and national origin discrimination and unlawful retaliation. Plaintiff has timely served a Colorado Governmental Immunity Act Notice.

## III. PARTIES

5. Plaintiff Heidi Loshbaugh is a resident of Denver, Colorado.

6. The Defendant Community Colleges and Occupational Education System ("CCCS") is an agency of the State of Colorado.

7. The Defendants Byron McClenney, Rollie Heath, Ken Weil, Daniel Villanueva, Russ Meyer, Jim Johnson, Marie-Vittoria Carminati, Presley Askew, Theresa Pena, Kelly O'Dell, and Elena Barrera are members of the Board of CCCS. By virtue of their positions, Plaintiff has sued these Defendants in their official capacity, because they have the authority to implement the prospective relief requested by Plaintiff Loshbaugh.

8. Defendant Everette Freeman is the President of CCD, and Dr. Loshbaugh's former supervisor. He is a resident of the State of Colorado. By virtue of his position, Defendant Freeman has been sued in his official capacity because he has

the authority to implement the prospective relief requested in Plaintiff Loshbaugh's Complaint. Defendant Freeman is also sued in his individual capacity.

9. 9. Defendant Rhonda Epper is the Provost of CCD and Dr. Loshbaugh's former supervisor. Dr. Epper is a resident of the State of Colorado. By virtue of her position, Defendant Epper has been sued in her official capacity because she has the authority to implement the prospective relief requested in Plaintiff Loshbaugh's Complaint. Defendant Epper is also sued in his individual capacity.

10. Defendant Patty Davies is the Human Resources Director of CCD. Ms. Davies is a resident of the State of Colorado. By virtue of her position, Defendant Davies has been sued in her official capacity because she has the authority to implement the prospective relief requested in Plaintiff Loshbaugh's Complaint. Defendant Davies is also sued in his individual capacity.

## IV. GENERAL ALLEGATIONS

11. Dr. Loshbaugh commenced her employment as Dean of Math and Science Department of CCD in 2011. From April 2012, through April of 2017, Dr. Loshbaugh received performance evaluations with ratings that ranged from exceeds expectations to exemplary.

12. Dr. Loshbaugh received merit increases in each and every year of her employment between 2012 and 2017.

13. At the end of April, 2017, Dr. Loshbaugh received yet another exemplary performance review. Provost Dr. Rhonda Epper noted in the evaluation that Dr. Loshbaugh was a huge asset to CCD, stating: "I appreciate Heidi's willingness to take on new challenges with enthusiasm, and her commitment and passion she shows our

students every day." In the April, 2017, evaluation, Dr. Epper applauded Dr. Loshbaugh for receiving a $3 million dollar United States Department of Education grant and for meeting the "successful launch of CCD's Math Pathways Program."

14. Beginning in spring, 2017, Dr. Loshbaugh was part of a math faculty selection process to fill four vacant positions in the CCD Math Department. Dr. Loshbaugh; CCD Math Department Chair, Teresa Adams; and the hiring committee, recommended as finalists a Latina, a Latino, a middle-aged Asian-American female, and a male immigrant from Viet Nam. The candidate who ranked fifth (and who was not a finalist) was a gay, white man; the sixth ranked candidate was an immigrant from Asia. CCD did not hire these finalists, or other higher ranked candidates who were also in protected classes, including two white females over the age of 50.

15. On July 7, 2017, at CCD President Dr. Everette Freeman's direction, CCD informed Ms. Adams that it was going to hire Dr. Percy Makita, a straight, black male who was under 40 years of age. Dr. Makita had ranked tenth out of fourteen qualified candidates. In the Position Statement that CCD filed with the CCRD in response to Dr. Loshbaugh's Charge of Discrimination and Retaliation, CCD admitted that Dr. Makita was selected in part because of his race.

16. On May 11, 2017, Dr. Loshbaugh complained about the discriminatory hiring process to CCD CFO Duane Risse. Dr. Loshbaugh complained about race discrimination in the hiring process to Provost Rhonda Epper on May 19, 2017, and again on May 24, 2017. Dr. Loshbaugh complained to Risse and to Epper that racial preferences were driving a discriminatory hiring process. Dr. Loshbaugh explained that qualified minority candidates were being passed over and she complained that race was

used to as the basis for hiring a less well-qualified candidate. Dr. Loshbaugh also stood up for the unsuccessful candidates, all of whom belonged to protected classes, associating herself with them. Based on this association and in retaliation for her complaints about race discrimination, CCD launched a campaign of discrimination and retaliation against Dr. Loshbaugh beginning shortly after her complaints to Risse and Epper.

17. The reaction to Dr. Loshbaugh's complaints of race discrimination was swift. On May 31, 2017, Patty Davies and Rhonda Epper retaliated against Dr. Loshbaugh by adding an addendum to her exemplary April 25, 2017, performance review. The addendum raised new issues which had never previously been brought to Dr. Loshbaugh's attention and which were highly critical of her performance. Among other things, the addendum criticized Dr. Loshbaugh's supervisory and leadership skills, which were, of course, the same leadership and supervisory skills for which she had just weeks earlier received an exemplary review on April 25, 2017.

18. On June 22, 2017, Dr. Epper sent Dr. Loshbaugh and email in which she falsely accused Dr. Loshbaugh of "undermining [her] . . . . directives." Dr. Epper claimed that Dr. Loshbaugh had undermined her by offering an employee a new position with the CCD CCTE Tutoring staff. However, in that same email, Dr. Epper also admitted that Dr. Loshbaugh had approached her about filling the position and that Epper had supported it.

19. On July 10, 2017, Dr. Loshbaugh again complained to Dr. Epper that hiring Dr. Percy Makita based on his race was a violation of federal and/or state law.

Dr. Epper responded that Dr. Freeman had made the decision to go forward with the hire and that his decision was final.

20. Teresa Adams complained that CCD engaged in discrimination in the hiring of Dr. Makita during July and August of 2017. On August 21, 2017, Ms. Adams sent an email criticizing the use of race in offering the position to an unqualified candidate.

21. Dr. Epper instructed Dr. Loshbaugh to tell Teresa Adams that she would be reprimanded for her email. Over objection, Dr. Loshbaugh complied. On August 23, 2017, Dr. Epper informed Dr. Loshbaugh that CCD was going to demote Teresa Adams from Chair of the Department to a professorship position. Dr. Loshbaugh then complained that Teresa Adams was being unlawfully retaliated against for her complaint of race discrimination and attempted to convince Dr. Epper not to retaliate against her. Dr. Epper refused and instructed Dr. Loshbaugh to proceed with the demotion.

22. On August 23, 2017, Dr. Loshbaugh informed Teresa Adams that she was being demoted. After Dr. Loshbaugh complained about the unlawful demotion of Teresa Adams, Defendants began discriminating against Dr. Loshbaugh based upon her association with Teresa Adams. Defendants also retaliated against Dr. Loshbaugh for her complaint that CCD retaliated against Adams for her complaint of discrimination.

23. In July of 2017, Dr. Loshbaugh's mother had major spinal surgery and in August of 2017, Dr. Loshbaugh's father was diagnosed with pancreatic cancer.

24. Dr. Loshbaugh informed Dr. Epper of her parents' disabilities and applied for and received intermittent FMLA leave beginning on August 10, 2017. Between

August and the end of November of 2017, Dr. Loshbaugh took a total of ten days of FMLA leave.

25. In August of 2017, Dr. Epper reassigned most of Teresa Adams' job responsibilities to Dr. Loshbaugh, including the supervision of all of Ms. Adams' 18 full time professors and 45 adjuncts. These duties were added to Dr. Loshbaugh's already demanding supervisory workload. Five of the full-time professors were brand new, which meant significant onboarding responsibilities in addition to routine supervision. As a result, during the 2017 and 2018 academic year, Dr. Loshbaugh had 28 direct reports and approximately 140 total employees that she supervised indirectly. Dr. Loshbaugh's repeated requests for assistance with this heavy workload from Dr. Epper were ignored.

26. On September 12, 2017, Dr. Epper falsely accused Dr. Loshbaugh of failing to limit the assignment of faculty "overload" hours. Overloads occur when faculty members are assigned to teach more than 15 credit hours. In the Math Department, the largest enrolled department at CCD, the shift to a new curriculum structure known as "Math Pathways" required almost 100 new sections in the fall of 2016 and the hire of 16 additional adjuncts. In the fall of 2017, the Department hired more than 15 additional adjuncts, as well as the five new full-time hires in 2017 and 2018. However, between increasing demand, and the creation of many new sections, there were still not enough math faculty to meet the demand. This led to the need for many mathematics faculty members to teach overloads. Dr. Loshbaugh notified Dr. Epper of the necessity to require faculty overloads.

27. During her October 20, 2017, mid-year review, Dr. Epper directed Dr. Loshbaugh to remove herself from her role as a co-chair on the Learning Support Taskforce despite the significant time she'd already spent leading that project. Removal of this responsibility was not intended to and did not significantly reduce Dr. Loshbaugh's workload. Instead, Dr. Epper stripped Dr. Loshbaugh of this responsibility in retaliation for her previous protected complaints. Dr. Epper told Dr. Loshbaugh that if she did not remove her role in the Taskforce from her performance goals, she would be penalized in her final evaluation. Despite withdrawing from the role, and removing it from her goals, as Dr. Epper demanded, in the final evaluation of Dr. Loshbaugh, Dr. Epper still reviewed her performance on the Taskforce, and unfairly claimed she had done poorly in that role. Dr. Loshbaugh's peers who were co-chairs of the Taskforce and who did not complain of discrimination received no negative performance evaluation. According to CCD's performance supervision guidelines, employees are not supposed to be evaluated on performance goals that had been removed during the evaluation cycle.

28. Even though Dr. Loshbaugh was forced to withdraw from the Taskforce, shockingly, in its Response to Dr. Loshbaugh's charge of discrimination filed with the CCRD, CCD asserted that Dr. Loshbaugh voluntarily resigned from the task force. Responsibilities for the Taskforce were reassigned to a younger employee who had not complained to CCD of discrimination or retaliation.

29. After Dr. Loshbaugh's complaints, Dr. Epper removed other job responsibilities from Dr. Loshbaugh's duties including supervision of the Tutoring Center; and direct responsibility for the Science Tutoring Program, which Dr. Loshbaugh

had initiated. The removal of these job responsibilities were not intended to and did not significantly reduce Dr. Loshbaugh's workload. Instead, Dr. Epper removed these responsibilities as part of her campaign of retaliation against Dr. Loshbaugh.

30. Dr. Loshbaugh's father died on November 15, 2017.

31. In February of 2018, Dr. Epper reprimanded Dr. Loshbaugh for going to Front Range Community College for a STEM conference. However, attendance at this conference was essential to Dr. Loshbaugh's performance of her job responsibilities and was part of the annual performance goals that had previously been approved *twice* by Dr. Epper. Despite this, Dr. Epper claimed that Dr. Loshbaugh had been "out of the office too much and [should not travel]."

32. On February 13, 2018, Dr. Epper approved Dr. Loshbaugh's attendance at an HSI STEM conference in Dallas, Texas, stating "sounds great."

33. On February 28, 2018, the day Dr. Loshbaugh returned from the HSI STEM conference, Dr. Epper reprimanded Dr. Loshbaugh for "being out of the office too much."

34. On February 28, 2018, Dr. Epper sent Dr. Loshbaugh an email complaining about her performance. Dr. Epper's concerns as set forth in the email were clearly pretextual. Dr. Loshbaugh provided documentation showing Dr. Epper that her criticisms were incorrect and unsubstantiated and that Dr. Loshbaugh was performing at her usual exceptional level of performance. Dr. Epper did not respond to let Dr. Loshbaugh know that there were any issues or that she disagreed with Dr. Loshbaugh's response. Dr. Epper promised to follow up on the alleged issues in a one-on-one meeting but never did.

35. On March 2, 2018, Dr. Loshbaugh again complained to Dr. Epper that her workload was unmanageable. However, Dr. Epper refused to address Dr. Loshbaugh's workload and continued to heavily scrutinize her performance.

36. On March 16, 2018, Dr. Epper gave Dr. Loshbaugh a Performance Improvement Plan ("PIP"). The concerns set forth in the PIP were false, unfair or inaccurate. For example, Dr. Loshbaugh was penalized over the contents of one mathematics examination despite the fact that approximately 100 mathematics examinations are administered each semester and as Dean, Dr. Loshbaugh has no responsibility for reviewing them. Upon information and belief Defendants Freeman and Davis directed and a/or approved of the decision to administer the PIP.

37. Also in the PIP, Dr. Epper penalized Dr. Loshbaugh again for overloads that were the result of the increasingly understaffed Math Department. However, Dr. Epper had received Dr. Loshbaugh's overload request *three months' prior* in December of 2017; these contracts with the Mathematics Department faculty had been *approved* by Dr. Epper. No new overload requests had been submitted to Dr. Epper.

38. In the PIP, Dr. Loshbaugh was accused of submitting late performance documentation for her subordinates but in fact Dr. Loshbaugh submitted all but one of the 28 evaluations within the timeframe typically expected at CCD. In contrast, other academic deans who had not complained about discrimination and retaliation were given flexibility with respect to similar administrative deadlines. The year before, when Dr. Loshbaugh submitted late documentation, she was not given any negative feedback, and received an exceptional performance review. Further, another dean who

did not submit documentation by the provost's deadline received no penalty nor even communication that the deadline had passed.

39. Finally, in the PIP, Dr. Epper accused Dr. Loshbaugh of bullying employees. However, when Dr. Loshbaugh inquired, Dr. Epper admitted that she could not remember the name of a person who had complained.

40. Patty Davies subsequently informed Dr. Loshbaugh that the accusation of bullying came from one of Dr. Loshbaugh's direct reports who was a poor performer and had been out on leave for about five weeks prior to the PIP meeting, in which Ms. Davies first accused Dr. Loshbaugh of bullying. The employee was on a Corrective Action Plan because of routine and flagrant errors she committed in completing faculty contracts. Dr. Epper knew Dr. Loshbaugh had been working with the employee since January of 2016 to improve her abysmal performance and was thus aware that Dr. Loshbaugh's criticism of this employee's performance could have resulted in false accusations of bullying.

41. In further violation of CCD's typical practice with respect to supervision and evaluation, many of the issues included in the PIP had never been brought to Dr. Loshbaugh's attention before.

42. On April 12, 2018, Dr. Loshbaugh asked Dr. Epper when she could be removed from the PIP and Dr. Epper replied that she was not sure but that it might be in three months.

43. The PIP stated that Dr. Loshbaugh should contact Dr. Epper if she needed assistance in accomplishing the expectations set forth in the PIP. Despite Dr. Loshbaugh's repeated requests for feedback and assistance, Dr. Epper provided none.

Dr. Epper confessed on multiple occasions that even though she was Dr. Loshbaugh's supervisor she was "unfamiliar" with the details of the PIP. Dr. Epper also did not provide Dr. Loshbaugh with guidance to help her comply with vague and unclear directives that were included in the PIP.

44. On April 17, 2018 and again on May 17, 2018, Dr. Loshbaugh complained to CCD's new CFO, Kathy Kaoudis, about illegal discrimination in the hiring of Dr. Makita and that Dr. Loshbaugh had been retaliated against after complaining about discrimination.

45. On April 24, 2018, Dr. Loshbaugh received a "Needs Improvement" performance evaluation, despite acknowledging "significant improvement in Heidi's communication and outreach," and her huge contributions to CCD over the 2017 and 2018 academic year. The evaluation conflicted with CCD's personnel evaluation manual which direct that a Needs Improvement evaluation must be holistic in its assessment of an employee's performance over the entire performance cycle, focus on significant performance duties rather than minor details, and provide narrative evidence for actions. Upon information and belief Defendants Freeman and Davies directed or approved the needs improvement performance evaluations.

46. On May 23, 2018, Dr. Loshbaugh filed a charge of race, sex, national origin and age and disability discrimination and unlawful retaliation with the Colorado Civil Rights Division.

47. On May 24, 2018, Dr. Loshbaugh filed with CCCS an internal complaint of discrimination based upon gender and age and based upon her association with Latino

and Asian candidates for employment, some of whom were immigrants as well as a candidate who was female and over the age of 40 and a gay candidate.

48. Dr. Loshbaugh's internal complaint also asserted that she had been retaliated against for her previous complaints regarding race discrimination and for her association with Dr. Adams. Dr. Loshbaugh also complained that she had been retaliated against for her use of FMLA leave and based upon her association with her disabled parents.

49. Dr. Loshbaugh submitted her complaint to CCCS Associate Vice President, Christina Cecil; CCCS Legal Counsel Angela Gramse, and CCCS Civil Rights Investigator Daniel Kast.

50. On May 30, 2018, only one week after filing her complaints of discrimination and retaliation with the CCRD and internally with CCD, Dr. Loshbaugh was summoned to a meeting with Provost Rhonda Epper and CCD HR Director, Patty Davies. Dr. Epper and Ms. Davies told Dr. Loshbaugh that she was being terminated effective immediately. Upon information and belief, Defendant Freeman participated in the decision to terminate Ms. Loshbaugh. Dr. Epper and Ms. Davies presented Dr. Loshbaugh with a Settlement Agreement and Release. Dr. Epper told Dr. Loshbaugh that if she signed the Release, CCD would characterize her termination as a resignation and that Dr. Epper could then support her in her "future career." The obvious inference is that Dr. Epper would not support Dr. Loshbaugh if she did not release her claims.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Unlawful Discrimination and Retaliation in Violation of Title VII
### (against Defendant CCCS)

51. Plaintiff hereby incorporates Paragraphs 1 through 50 as though fully alleged herein.

52. Plaintiff Loshbaugh engaged in protected activity under Title VII of the Civil Rights Act by opposing Defendant's discriminatory and retaliatory policies and practices. Defendant knowingly and willfully engaged in illegal employment policies and practices in retaliation against Plaintiff Loshbaugh for engaging in this protected activity.

53. Plaintiff Loshbaugh associated with and advocated on behalf of protected class employees.

54. Plaintiff Loshbaugh was discriminated against by the Defendant based upon this association and advocacy.

55. The illegal employment practices and policies to which Plaintiff Loshbaugh has been subjected include, but are not limited to the following: (a) subjecting Plaintiff Loshbaugh to a hostile and offensive work environment; (b) removal of job responsibilities; (c) subjecting Plaintiff Loshbaugh to an unwarranted and inaccurate PIP and Needs Improvement performance evaluation and (d) terminating Plaintiff Loshbaugh's employment.

56. Defendant's actions as described herein were willful and wanton and taken in reckless disregard for Plaintiff Loshbaugh's protected rights and feelings.

57. Defendant's failed to exercise reasonable care to prevent and correct promptly any unlawful harassing behavior.

58. Plaintiff Loshbaugh attempted to take advantage of preventative and corrective opportunities provided by the Defendant's to otherwise avoid harm.

59. Plaintiff Loshbaugh has suffered injuries and damages as a result of the aforementioned discriminatory and retaliatory acts of the Defendant's that should include lost wages, lost benefits, compensatory damages, and her attorney fees and costs.

**SECOND CLAIM FOR RELIEF**
**Discrimination and Retaliation in Violation of 42 U.S.C. § 1981**
**(Against Defendants Byron McClenney, Rollie Heath, Ken Weil, Daniel Villanueva, Russ Meyer, Jim Johnson, Marie-Vittoria Carminati, Presley Askew, Theresa Pena, Kelly O'Dell, Elena Barrera, Patty Davies, Everette Freeman, and Rhonda Epper in their official capacities for prospective relief only and against Defendants Patty Davies, Everette Freeman and Rhonda Epper, in their individual capacities)**

60. Plaintiff hereby incorporates Paragraphs 1 through 59 as though fully alleged herein.

61. The Defendants who are sued in their official capacities are sued in their official capacities because they have the authority to implement prospective relief.

62. As an individual associated with Latino, Asian American and Vietnamese applicants for employment, Plaintiff Loshbaugh is a member of a protected class under 42 U.S.C. § 1981.

63. Plaintiff Loshbaugh opposed race discrimination in the hiring of a less well-qualified African American applicant for a math faculty position.

64. In opposing discrimination on the basis of race, Plaintiff Loshbaugh engaged in conduct protected by 42 U.S.C. § 1981.

65. Defendants knowingly and willfully engaged in illegal employment policies and practices that have discriminated and retaliated against Plaintiff Loshbaugh, as more fully set forth in ¶ 56, *supra*.

66. The Defendants' actions action as described here were willful and wanton and taken in reckless disregard to Plaintiff Loshbaugh's rights and feelings.

67. The aforementioned conduct represents the official custom, policy or practice of the Defendants.

68. Defendants' conduct violated clearly established rights of the Plaintiff of which reasonable persons in the Defendants' position knew or should have known.

69. As a result of Defendants' unlawful conduct, Plaintiff Loshbaugh has suffered damages, including lost wages and benefits, compensatory damages, and attorney fees and costs.

**THIRD CLAIM FOR RELIEF**
**First Amendment Freedom of Speech and Association**
**Pursuant to 42 U.S.C. Section 1983**
**(Against Defendants Byron McClenney, Rollie Heath, Ken Weil, Daniel Villanueva, Russ Meyer, Jim Johnson, Marie-Vittoria Carminati, Presley Askew, Theresa Pena, Kelly O'Dell, Elena Barrera, Patty Davies, Everette Freeman, and Rhonda Epper, in their official capacity for prospective relief only, and against Patty Davies, Everett Freeman and Rhonda Epper in their individual capacities).**

70. Plaintiff hereby incorporates Paragraphs 1 through 69 as though fully alleged herein.

71. The Defendants who are sued in their official capacities are sued in their official capacities because they have the authority to implement prospective relief.

72. Plaintiff Loshbaugh exercised her right to freedom of speech as afforded by the First Amendment to the United States Constitution by speaking out about matters of public concern when she opposed discrimination by CCD against other employees and applicants for employment based upon race and when she opposed retaliation against Teresa Adams for her complaint of race discrimination.

73. Plaintiff Loshbaugh's speech was not made pursuant to her official job duties.

74. Plaintiff Loshbaugh associated with CCD employee Teresa Adams who also complained of race discrimination with respect to the hiring of Dr. Makita.

75. Defendants' intentionally and willfully retaliated against Plaintiff Loshbaugh for exercising her freedom of speech and association by subject her to illegal employment practices and policies as set forth in ¶ 56, *supra*.

76. Defendants' retaliatory conduct was substantially motivated by Plaintiff Loshbaugh's exercise of freedom of speech and association.

77. Defendants' conduct represented the official custom, policy or practice of Defendants.

78. Defendants' conduct violated the clearly established rights of Plaintiff Loshbaugh which reasonable persons in Defendants position knew or should have known.

79. As a result of Defendants' misconduct Plaintiff Loshbaugh suffered damages, including lost wages, compensatory damages, punitive damages against the individually named Defendants and has occurred attorneys fees and costs.

**FOURTH CLAIM FOR RELIEF**
**Disability Discrimination in Violation of the ADA**
**(Against Defendants Byron McClenney, Rollie Heath, Ken Weil, Daniel Villanueva, Russ Meyer, Jim Johnson, Marie-Vittoria Carminati, Presley Askew, Theresa Pena, Kelly O'Dell, Elena Barrera, Everette Freeman, Rhonda Epper and Patty Davies, in their official capacities for prospective relief only)**

80. Plaintiff hereby incorporates Paragraphs 1 through 79 as though fully alleged herein.

81. The Defendants who are sued in their official capacities are sued in their official capacities because they have the authority to implement prospective relief.

82. The ADA, 42 U.S.C. Section 12101, *et seq*., prohibits employment discrimination based upon disability in the terms, conditions, promotional opportunities, salary, benefits and classification of employees. The ADA also prohibits employment discrimination based upon an employee's association with a disabled person.

83. Plaintiff Loshbaugh was associated with disabled persons including her father who suffered from pancreatic cancer and her mother who suffered from disabling spinal cord and related neurological conditions.

84. Defendants subjected Plaintiff Loshbaugh to illegal employment practices and policies as set forth in ¶ 55, *supra*.

85. Defendants' actions as described herein were willful and wanton and taken in reckless disregard for Plaintiff Loshbaugh's protected rights and feelings.

86. As a proximate result of Defendants' discriminatory actions, Dr. Loshbaugh suffered lost wages, compensatory damages and has incurred attorneys fees and costs.

**FIFTH CLAIM FOR RELIEF**
**(Disability Discrimination in Violation of the Federal Rehabilitation Act Against Defendant CCCS)**

87. Plaintiff hereby incorporates Paragraphs 1 through 6 as though fully alleged herein.

88. The Defendant CCCS is the recipient of federal assistance and is therefore subject to the provisions of the Federal Rehabilitation Act of 1975, as amended, 29 USC § 791, ("FRA").

89. The FRA prohibits employment discrimination based upon disability in the terms, conditions, promotional opportunities, salary, benefits and classification of employees. The FRA also prohibits employment discrimination based upon an employee's association with a disabled person.

90. Plaintiff Loshbaugh was associated with disabled persons including her father who suffered from pancreatic cancer and her mother who suffered from disabling spinal cord and related neurological conditions.

91. Defendants subjected Plaintiff Loshbaugh to illegal employment practices and policies as set forth in ¶ 56, *supra*.

92. Defendants' actions as described herein were willful and wanton and taken in reckless disregard for Plaintiff Loshbaugh's protected rights and feelings.

93. As a proximate result of Defendants' discriminatory actions, Dr. Loshbaugh suffered lost wages, compensatory damages and has incurred attorneys fees and costs

**SIXTH CLAIM FOR RELIEF**
**Family Medical Leave Act Discrimination**
**29 U.S.C. Section 2601, et seq.**
**(Against Byron McClenney, Rollie Heath, Ken Weil, Daniel Villanueva, Russ Meyer, Jim Johnson, Marie-Vittoria Carminati, Presley Askew, Theresa Pena, Kelly O'Dell, Elena Barrera, Patty Davies, Everette Freeman, and Rhonda Epper in their official capacities only; and against Patty Davies, Everette Freeman and Rhonda Epper in their individual capacities)**

94. Plaintiff hereby incorporates Paragraphs 1 through 93 as though fully alleged herein.

95. The Defendants who are sued in their official capacities are sued in their official capacities because they have the authority to implement prospective relief.

96. Plaintiff applied for and was granted FMLA leave based upon the serious health conditions of her close family members. Plaintiff complied with the FMLA Notice, Medical Certification and other reporting requirements.

97. Plaintiff was subjected to illegal employment policies and practices as set forth in ¶ 56, *supra*, for having asserted her FMLA rights.

98. Defendants' actions as described herein were willful and wanton and taken in reckless disregard for Plaintiff Loshbaugh's protected rights and feelings.

99. As a result of Defendants' unlawful conduct Plaintiff sustained damages, including lost wages, compensatory, liquidated damages and attorney fees and costs.

WHEREFORE Plaintiff Loshbaugh respectfully requests that this Court enter judgment as follows:

1. Plaintiff does not seek monetary damages from Defendants who have been sued in their official capacities on official capacity claims. Plaintiff Loshbaugh seeks prospective relief from those Defendants as may be ordered by the Court;

2. Plaintiff seeks all legal and equitable remedies from the remaining defendants, as allowed by law, as follows:

(a) Injunctive and declaratory relief;

(b) damages in such an amount as shall be proven at trial for back-pay and damages including lost benefits, wages, promotions, tenure, seniority, lost promotions, and other employment opportunities;

(c) an order to reinstate Plaintiff, or in the alternative to pay front-pay and benefits, including lost benefits in an appropriate amount;

(d) compensatory damages, including emotional distress as allowed by law;

(e) punitive damages against Defendants named in their individual capacities as allowed by law;

(f) attorney's fees and costs as provided for by law;

(g) pre- and post-judgment interest, costs, expert witness fees; and

(h) such other relief as the Court deems just and proper.

**PLAINTIFF LOSHBAUGH REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 6th day of May, 2019.

**BENEZRA & CULVER, P.C.**

*/s/ Seth J. Benezra*

Seth J. Benezra, Esq.
John A. Culver, Esq.
Benezra & Culver,P.C.
633 17th St., Suite 1450
Denver, CO 80202
Telephone: (303) 716-0254
FAX: (303) 716-0327
E-mail: sjbenezra@bc-law.com
Email: jaculver@bc-law.com
Attorney for Plaintiff

Plaintiff's Address
1680 Yates Street
Denver, Colorado 80204